W. B. HUNT, Complainant-Appellee, v. TEMCO, INC.,
Defendant-Appellant. —452 S.W.2d 879.

Middle Section. September 15, 1969.

Rehearing Denied October 31, 1969.

Certiorari Denied by Supreme Court February 16, 1970.

Petition to Rehear Petition for Writ of Certiorari Denied April 6, 1970.

38

Albert Williams and Kenneth Harwell, Nashville, for complainant-appellee.

John J. Hooker, of Hooker, Keeble, Dodson & Harris and Edmond J. Walsh, Nashville, for defendant-appellant.

PURYEAR, J. This is a suit filed by a former sales manager against his former employer to collect an amount which the sales manager alleges the employer owed him as commission on sales of certain gas heating appliances manufactured and sold by the employer.

The sales manager, W. B. Hunt, who was the complainant below, first became connected with the employer, Temco, Inc., the defendant below, in the year 1932.

In that year, complainant designed a small gas heater and he contacted the president of Temco in regard to manufacturing this heater, as a result of which an agreement was reached between the parties for complainant to become a salesman for defendant pursuant to a written contract between the parties.

Finally, complainant was employed as sales manager for the defendant. The last written agreement executed between the parties was in August of 1940, and, under this agreement, complainant was to act as sales manager for defendant and complainant agreed to employ, subject to approval of defendant, salesmen to work under complainant's direction in such of his territory as he might assign to them, which territory comprised most of the United States.

Commissions payable to complainant under the terms of said written contract were as follows:

20% of the net price obtained from the dealers on all sales of gas heaters and floor furnaces made by complainant to dealers sold at the defendant's list price to dealers.

10% on all sales of gas heaters and floor furnaces made by complainant to jobbers and distributors at list prices less 20%.

Above commissions applied on defendant's published price lists, excluding the cheap bathroom heaters, such as its models #970 and 880 which only paid 5% when sold at 20% discount and 10% when sold at list prices. These commissions were not applied to sales of close-out or obsolete models that were on hand from time to time and at such times as defendant might publish a summer sale discount on defendant's price list, and the defendant was to work out a special commission arrangement for these sales.

This last written agreement was to expire, according to the terms thereof, on January 7, 1946, but it was extended twice by oral agreements until January 7, 1948.

In the early years of complainant's employment, he earned very little, but the business continued to grow to such an extent that, during the year 1947, complainant's commissions amounted to approximately $130,000.00.

Under the terms of the employer-employee agreement complainant was to be credited with commissions on the net sales of both himself and all salesmen working under him, and drawing accounts as were agreed upon by complainant and said salesmen, were to be deducted from the commission account of complainant.

In other words, a portion of the commissions provided for in the contract of the parties was to be used in paying the commissions and expenses of other salesmen working under the supervision and direction of complainant.

In the early part of the year 1947, complainant became interested financially in another company in Ohio that was manufacturing gas heaters. Mr. W. B. Evans, President of Temco, discussed this matter with complainant and expressed his disapproval of such connection. During the year 1947 many other discussions occurred between Mr. Evans and the complainant in which this connection was discussed and finally, a showdown occurred between complainant and Mr. Evans during the latter part of the year 1947.

This showdown resulted in the fact that the contract was not extended for another year and therefore, it expired on January 7, 1948. However, complainant continued to represent the defendant and he and his sales force continued to take orders for sales of the complainant's heating appliances until February 24, 1948, on which latter mentioned date the complainant was discharged as sales manager for the defendant.

On November 29, 1952, the complainant filed the original bill in this case in which he alleged that the defendant owed him a total of $252,000.00 as commissions on sales of merchandise sold by him and his sales force and shipped by defendant to customers during the year 1948.

To this original bill, defendant filed an answer denying that it owed complainant any sum of money for commissions on sales.

On November 19, 1959, complainant filed a motion seeking to amend his bill and on February 19, 1960, by leave of the Chancellor, complainant was allowed to amend the bill so as to sue for $270,467.42 as accrued commissions, or in the alternative, the sum of $270,467.42 as a reasonable sum for services rendered and for benefits conferred

upon defendant plus a reasonable rate of interest for withholding said sums.

Defendant first filed a plea of the statute of limitations to the bill as amended and later filed an answer to the amended bill denying that it owed complainant any sum of money either upon a contract or upon a quantum meruit basis.

After considerable proof was taken, the matter was heard by the Chancellor on February 10, 1961, as a result of which the Chancellor decreed as follows:

"It is, therefore, ordered, adjudged and decreed by the Court that complainant is entitled to receive a commission on all orders under the terms of the express contract of 1947, heretofore referred to, until the expiration thereof on January 7, 1948, and entitled to receive a commission on a quantum meruit basis on all orders taken accepted and shipped from the expiration of the aforesaid contract through February 16, 1948, upon the basis set forth in said opinion.

It is further ordered, adjudged and decreed by the Court that complainant be and is hereby entitled to a recovery and the defenses to the bill be and are hereby overruled.

It is further ordered, adjudged and decreed that the claim of complainant for interest from and after the filing of the bill be and is hereby denied.

It is further ordered and decreed by the Court that the Master be and is hereby directed to hear proof, including that on file, and report his findings to the Court upon the amounts due complainant by the de-

fendant upon the basis set forth above and in the memorandum opinion.

The defendant is hereby taxed with all costs of this cause.

All other matters are reserved pending the incoming of said report.

To the foregoing decree and to all orders and decrees heretofore entered in this cause the defendant, Temco, expects.'' (Vol. 1, Tr. pp. 64, 65)

By decree of the Chancellor, dated January 13, 1964, the period for ascertainment of commissions due on a quantum meruit basis was changed from January 7, 1948 through February 16, 1948, so as to extend such period to February 24, 1948. Such decree contains the following stipulation of counsel and order of the Court thereon:

''Following the argument of Counsel relative to the above mentioned motion it was agreed by Solicitors of record, in the event the Court should overrule the motion and hold that the reference should be completed, and there would be no objection to the Clerk and Master finding the established commissions according to the contract between the parties as being the fair value of services, if any, for the second period mentioned in the reference, namely January 7, 1948 to February 24, 1948.

It is therefore ORDERED, ADJUDGED and DE-CREED by the Court that the motion of the complainant to set aside the order of reference in this cause be and the same is denied. The Clerk and Master will proceed with the execution of the order of reference, except that, pursuant to the agreement of the parties

in open court, the Master need not divide the commissions to which the Complainant is entitled into two time-periods, that is, the period of contract commissions and the period of quantum meruit commissions, but instead shall only report the total commissions to which the Complainant is entitled." (Vol. 1, Tr., pp. 84, 85)

Pursuant to the foregoing orders of reference, the Honorable A. P. Ottarson, Jr., Clerk and Master, took additional proof and after considering such additional proof, together with that already on file, the Clerk and Master filed a report in which he reported that he found the complainant entitled to recover of the defendant commissions in the total sum of $14,190.41, which report was filed by the Clerk and Master on August 11, 1965.

To the foregoing report of the Clerk and Master, the complainant filed exceptions, which exceptions were overruled by the Clerk and Master and an appeal to the Chancellor was granted.

After considering said exceptions to the Clerk and Master's report, the Chancellor filed the following memorandum opinion:

"This case has given me more concern than any case I have tried in my nine years on the Bench. I have wrestled with the record and my conscience and I cannot come to the conclusion that justice has been done.

I have found that the complainant had secured orders and commitments for the defendant in January and February 1948 in millions of dollars.

I have also held:

'The position of the defendant is now absolutely contrary to the position heretofore taken during this long lawsuit. The deposition of Mr. Bradley completely changes the defendant's former position. However, it is to be noted that Mr. Bradley's findings are based upon invoices and commission records. The best evidence of any payments to complainant is still absent from the record, namely, cancelled checks made payable to complainant and indorsed by him.

The deposition of Mr. Bradley, with his findings, is not binding upon the Master. He can consider it for what it's worth.

The Court is convinced that the defendant is justly indebted to the complainant and this Court wants to know and correctly ascertain the amount justly due. For this to be done it appears that the full and complete records, including the above referred to cancelled checks, should be presented to the Master for consideration.

After years of asserting that no money had been paid to complainant and that no money was due him, it is (a) late to now assert that many, many thousands of dollars had been paid complainant and only a few thousand are now due, less certain credits.

Any competent proof that will reveal the correct amount should be considered by the Master.' (Decree of June 15, 1962). I now think that the above referred to checks should be presented on the reference as well as copies of the income tax returns of the complainant

and the defendant for 1948 as well as any other evidence which will help reach the truth in this cause.

For the above reasons I am re-referring this cause and appointing Mr. Thomas W. Steele as Special Master. He shall review the proof on file, the evidence called for herein and such other competent evidence as may be available. (Gibson Suits in Chancery sec. 645 and sec. 666.)

The report of the Clerk and Master is held under advisement awaiting the report of the Special Master.

Decree accordingly.'' (Vol. 1, Tr. pp. 106, 107)

Pursuant to the foregoing memorandum opinion, the following decree and order of reference were entered by which the Honorable Thomas W. Steele, was appointed as Special Master and the matter was re-referred to him, which decree is as follows:

''This cause same on to be heard before the Honorable Ned Lentz, Chancellor, holding Part One of the Chancery Court at Nashville, upon the report of the Clerk and Master, the exceptions of the complainant filed thereto, the order of the Clerk and Master overruling the exceptions and granting an appeal to this Court; and

It appeared to the Court, after giving due consideration to the exceptions filed by the complainant, to the prior opinions of this Court and the entire record in this cause, that the Court cannot come to the conclusion that justice has been done the complainant for the reasons stated in a memorandum opinion of May 5, 1966, which opinion is made a part of the record.

It further appeared to the Court that this cause should be recommitted for the purpose and reasons stated in said opinion.

IT IS, THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that defendant present to the reference the checks above referred to in the memorandum opinion and in this decree, if there be any such checks, together with a copy of its income tax return for the taxable year of 1948.

IT IS FURTHER ORDERED by the Court that complainant present to the reference a copy of his income tax returns for the taxable year 1948.

IT IS FURTHER ORDERED by the Court that this cause be and is hereby referred to the Honorable Thomas W. Steele as a Special Master who shall review the proof on file, the evidence called for in the above memorandum opinion and such other competent evidence as may be available on the record, *and thereafter report to the Court the amount justly due complainant.*

IT IS FURTHER ORDERED by the Court that the report of the Clerk and Master be and is hereby held under advisement awaiting the report of Honorable Thomas W. Steele, the Special Master." (Emphasis supplied.) (Vol. II, Tr., pp. 108, 109)

After taking additional proof, and considering such additional proof, as well as that which was already on file in the case, the Special Master filed a report in which he first concluded and reported that the complainant was entitled to a recovery of $110,000.00 against the defendant for unpaid commissions.

Exceptions to this report were filed by both parties and the Special Master overruled the complainant's exceptions but sustained the defendant's exceptions to the extent of modifying his original report and amending same so as to conclude and report that he found the complainant entitled to recover $95,000.00 as unpaid commissions.

The matter then came on to be finally heard before the Chancellor on July 26, 1968, upon the entire record and especially the original and amended report of the Special Master. After keeping the matter under advisement, the Chancellor, on August 23, 1968, overruled the exceptions of both parties and confirmed the Special Master's report awarding the complainant a recovery of $95,000.00 with interest at the rate of 6% per annum from and after August 1, 1968, and fixed the Master's compensation for services rendered at $10,500.00 and ordered that said fee of $10,500.00 be taxed as part of the costs and adjudged all costs against the defendant.

The defendant excepted to the foregoing decree and prayed an appeal from such decree and all other orders and decrees adverse to the defendant, which appeal has been perfected and assignments of error have been filed.

To the action of the trial Court in not allowing a recovery against the defendant for the sum of $270,467.00 and not allowing interest from and after the time the matter was originally referred to the Clerk and Master, the complainant also excepted and has prayed and perfected a cross appeal.

We will discuss and consider the assignments of error in different order from that in which they have been arranged by counsel.

In its first assignment the defendant insists that the Chancellor erred in allowing a recovery in any amount because "the complainant was being flagrantly disloyal to the defendant, his employer, in operating a competing concern in competition with defendant's business and in selling competing merchandise and thereby injuring defendant and its business."

There is some evidence in the record that during the time in question here the complainant and some of his sales force were selling heaters produced by other manufacturers, some of which heaters were types not manufactured by Temco and some of which were of the same type manufactured by Temco.

There is also evidence in the record to the effect that complainant's connection with other companies manufacturing and selling heaters were well known to the officials of Temco and no objection was made to these connections until the officials of Temco decided that, for other reasons, they should get rid of the complainant.

There is no evidence in the record from which we could conclude that the complainant's connection with companies manufacturing and selling heaters competitive with the defendant had any adverse effect upon the business of defendant.

On the other hand, there is testimony in the record to the effect that complainant's connection with these other companies helped build additional business for the defendant. Some of the complainant's testimony of this phase of the matter is as follows:

"Q. Mr. Hunt, the President of Temco Corporation and other officials of the Temco Corporation, has made

a defense in this case and they have testified in other cases that you were handling other lines and that is how you breached your contract with Temco. In some of the testimony this Herron Heater has been mentioned many many times. Was this Herron Heater one of the lines that was requested by Mr. W. B. Evans, the President of the Corporation, that you mentioned awhile ago that you have shown here, Exhibit No. 7?

A. Yes, sir, that is right.

Q. You mentioned awhile ago he was requesting—

A. Yes, sir, he and I requested we get these heaters from any manufacturer in the United States as long as I was with the company, in order to help out the salesmen, the customers, and the distributors. To make that clear, when we set up a distributor, we did a little more in the way of sales than the average manufacturer of space heaters. That is how we became from unheard of to first place in the space heater business. The company in one of these contracts placed at our disposal display trucks, and these trucks, we would put our entire line of space heaters in same, which the company furnished.

That was in the contract which the salesmen or myself paid for the operation expense of these trucks. We would go into the distributor and suggest that this distributor give us one of his salesmen to go with our salesmen which we furnished all the expense of operation of the truck and we would make calls with their salesmen to the various dealers and we would demonstrate the merchandise we had and attempt to book orders and take orders from the dealer and which we passed on to the distributor.

Now, getting back to the radiant heater which we never did build, and which from year to year we requested any way we could get help, the same distributor where we spent our money of selling gas space heaters, he would go out from another manufacturing company and buy heaters similar to the radiant heater manufactured by the Herron Company, in which our salesmen in many cases would put the heater in from another manu-facturer which he did not derive five cents from in order to complete an order for this individual dealer. In other words, if a customer needs a radiant heater, a circulating heater in some cases will not answer the work; it is pretty much like if you go into a shoe store and you need a ten and they don't have it, so you just can't carry one or two items, you have to have a complete line. This distributor in turn had to buy these elsewhere in which we did everything we could to keep him happy, we even sold him in our display truck to help him out in this connection." (Dep. W. B. Hunt, pp. 42, 43, 44)

The issue presented by this first assignment has been reviewed by us de novo, with the usual presumption that the decree of the Chancellor is correct unless the preponderance of evidence is otherwise, and we have concluded that a preponderance of evidence does not show the complainant was guilty of any such breach of trust in his relations with defendant so as to prevent him from recovering the reasonable value of services rendered by him which conferred a benefit upon and was accepted by the defendant. Therefore, the first assignment of error is respectfully overruled.

We will now discuss and consider the fifth assignment, wherein the defendant insists that "the Chancellor erred

in referring the questions of the defendant's liability to the complainant to an outside attorney without the consent in open Court of both parties to such action, and also in accepting the unsupported opinion of the outside attorney as to the liability of the defendant and entered a judgment thereon.''

In his memorandum opinion filed May 5, 1966, wherein the Chancellor re-referred this matter and appointed Honorable Thomas W. Steele as Special Master, he said: ''For the above reasons I am referring this cause and appointing Mr. Thomas W. Steele as Special Master. He shall review the proof on file, the evidence called for herein and such other competent evidence as may be available. (Gibsons Suits in Chancery, sec. 645 and sec. 666.)''

The record does not reveal that the defendant made any objection or noted any exception to the action of the Chancellor in appointing Honorable Thomas W. Steele as Special Master.

■ It was held by the Supreme Court in Smith v. Frazier, 189 Tenn. 71, 222 S.W.2d 367 (1949), that where a party proceeds on, cooperates with and acts under an order of reference without exception until the issue has been determined against him upon that order by the Master and then by the Chancellor, he is thereby estopped to insist that the order should never have been entered.

This Court has held to the same effect in Robichaud v. Smith, 33 Tenn.App. 651, 232 S.W.2d 576 (1949).

It is now too late for the defendant to question the appointment of the Special Master and the action of the

Court in re-referring the matter of the amount of compensation to such Special Master.

Furthermore, the fact that the Chancellor parenthetically cited Section 666 Gibson's Suits in Chancery does not necessarily make the appointment of the Special Master void, because Section 665 Gibson's Suits in Chancery, Fifth Edition provides as follows:

"Sec. 665. *Reference May Be Made to Another than Master.*—The Chancellor ordinarily names the Clerk and Master as the one to execute a reference, but he is not constrained so to do. He may designate any other person or he may appoint two or more to carry out his directions and may apportion the work among two or more individuals. But no such selection should be made until after the principal questions of law have been settled and the methods of conducting the reference are made clear. However, these preliminary requirements may by agreement be dispensed with."

Therefore, the fifth assignment of error is respectfully overruled.

In its second assignment, defendant insists that it was error for the Chancellor to enter any judgment against the defendant, either the judgment for $95,000.00 or the $10,500.00 costs.

█ This makes it necessary for us to review de novo the evidence bearing on this issue, but we approach it with the usual presumption that the decree of the Chancellor is correct unless the preponderance of evidence is otherwise. (T.C.A. 27-303).

It is uncontradicted that gas heaters are seasonal merchandise and therefore, in order for Temco to properly

plan its business for the year 1948, it was necessary that it make arrangements to obtain orders and commitments during the latter part of 1947 and the early part of 1948. Complainant testified that Mr. Evans, President of Temco at the time, insisted that the complainant leave Nashville shortly after the middle of the year in 1947 and work the territories for the 1948 business.

He also testified that he returned to Nashville just before Christmas of 1947 with over two million dollars worth of orders or commitments to be manufactured and shipped by the defendant in 1948 and that he was complimented by Mr. Evans, who stated that it was the largest volume of business ever brought in there prior to the year they were going to manufacture for the succeeding year.

Mr. Hunt also testified that when he came into the defendant's factory at Nashville during the middle of February 1948, he turned over to the defendant somewhere between three million and three and one-half million dollars worth of orders to be manufactured and shipped in 1948.

Mr. Robert N. Smith, Vice-president and treasurer of Temco admitted that it was customary for the defendant to use the pre-seasonal orders to figure out the production schedule for the next season. Although Mr. Smith said he did not know the total amount of orders obtained by Mr. Hunt and his sales force for the year 1948, he did admit that at the beginning of the year 1948 they had a list of unfilled orders.

Although there are some rather sharp conflicts between the testimony of the complainant, on the one hand, and the testimony of Mr. Evans and Mr. Smith, on the other hand, we think the evidence preponderates in favor

of the Chancellor's conclusion that the defendant owed the complainant some amount as commission on orders for merchandise which he and his sales force had obtained and which orders were accepted and filled by the defendant in 1948.

In fact, defendant's counsel has practically conceded that the complainant was entitled to recover some amount, since counsel, in oral argument, at the Bar of this Court, insisted that the Special Master's report awarding complainant $95,000.00, together with a fee of $10,500.00 to the Master, and the Chancellor's decree confirming said report, should be set aside and that the report of Mr. A. P. Ottarson, Jr., Clerk and Master, awarding the complainant $14,190.41 should be confirmed.

We find no merit in the second assignment of error and it is respectfully overruled.

Under its seventh assignment of error, defendant insists that it was error for the Chancellor to enter a judgment in favor of complainant and against defendant for any amount because the complainant's amendment to his bill by which he sought recovery upon a quantum meruit basis constituted a new cause of action which was barred by the statute of limitations at the time such amendment to the bill was offered.

This Court said in Town of Franklin v. Hermitage Engineering Co., 12 Tenn.App. 434 (1930), that the test of whether or not an amendment introduces a new cause of action is determined by (1) would the same evidence support both of the pleadings, and (2) is the measure of damages the same in each case, citing Mellon v. American Flour & Grain Co., 9 Tenn.App. 383.

■ By applying the foregoing test, we conclude that the amendment to the complainant's bill by which he sought to recover upon a quantum meruit basis did not constitute a new cause of action and therefore, it relates back to the date when the original bill was filed so as to stop the running of the statute of limitations.

The seventh assignment of error is respectfully overruled.

In its third assignment of error, defendant insists (1) that the judgment in favor of complainant is not in accord with the relief sought in the original bill or the amendment thereto and (2) there is no basis found in the evidence upon which to determine the rate of commission upon sales alleged to have been made by complainant between January 7 and February 24, 1948, on a quantum meruit basis.

■ We find no merit in the first insistence, because the relief awarded complainant is well within the scope of the original bill and the amendment thereto.

■ Neither do we find any merit in the second insistence since the decree of the Chancellor, which appears at page 84, Volume One of the transcript, contains the following stipulation of counsel: ''That there would be no objection to the Clerk and Master finding the established commissions according to the contract between the parties as being the fair value of services if any for the second period mentioned in the reference namely, January 7, 1948 to February 24, 1948.''

The third assignment of error is respectfully overruled.

We will consider assignments four and eight together, because the main thrust of both of them is that the

Special Master's report awarding the complainant $95,000.00 is not supported by any material evidence in the record but is based upon "the Master's report which consists merely of the opinion and fanciful mathematics of the Master."

Defendant's counsel argue both orally and in their brief that the Special Master departed from the orders of reference and abandoned the instructions which the Chancellor had given him for ascertaining the amount due complainant.

Of course, when the Chancellor concluded that the complainant was entitled to recover some amount and originally referred the matter to Mr. A. P. Ottarson, Jr., Clerk and Master, the Chancellor used the following language in the order of reference:

"It is, therefore, ordered, adjudged and decreed by the Court that complainant is entitled to receive a commission on all orders under the terms of the express contract of 1947, heretofore referred to, until the expiration thereof on January 7, 1948, and entitled to receive a commission on a quantum meruit basis on all orders taken accepted and shipped from the expiration of the aforesaid contract through February 16, 1948*, upon the basis set forth in said opinion.

It is further ordered, adjudged and decreed by the Court that complainant be and is hereby entitled to a recovery and the defenses to the bill be and are hereby overruled.

---

* Later changed to February 24, 1948.

It is further ordered, adjudged and decreed that the claim of complainant for interest from and after the filing of the bill be and is hereby denied.

It is further ordered and decreed by the Court that the Master be and is hereby directed to hear proof, including that on file, and report his findings to the Court upon the amounts due complainant by defendant upon the basis set forth above and in the memorandum opinion." (Vol. 1, Tr. pp. 64, 65)

Later, after the Special Master was appointed and the matter was re-referred to such Special Master, the Chancellor entered an order which contained the following language:

"IT IS FURTHER ORDERED by the Court that this cause be and is hereby referred to the Honorable Thomas W. Steele as a Special Master who shall review the proof on file, the evidence called for in the above memorandum opinion and such other competent evidence as may be available in the record, *and thereafter report to the Court the amount justly due complainant.*" (Emphasis supplied.) (Vol. II, Tr. pp. 108, 109)

When the foregoing two orders of reference are construed together we reach the conclusion which was appropriately stated by the Special Master in his report as follows:

"Therefore, the fundamental standard here is just compensation, i. e., that sum which represents as nearly as possible the sum which would have been paid the complainant had the defendant maintained its records and accounts and conscientiously attempted to pay him his due." (Vol. II, Tr., p. 169)

When the Special Master's report and the exceptions thereto were considered by the Chancellor, he made the following observation:

"There were really two purposes in this reference and that was for the Master to report to the Court the amount justly due complainant and to reach the truth in this cause. The report of the Special Master is an exhaustive one and certainly is responsive in determining the amount due the complainant, and the Master's findings are supported by the proof." (Final decree Vol. II, Tr., p. 154)

We agree that the fundamental question sought to be determined by the reference was the amount which complainant was entitled to recover from defendant as just compensation for commissions on orders for sales obtained by him and his sales force and which orders were accepted and filled by the defendant in 1948.

Therefore, the defendant's insistence that the Special Master departed from the orders of reference and that his report is not responsive thereto is without any merit.

Since we have found that the foregoing insistence has no merit, then we next consider the second insistence raised under these two assignments that the Special Master's report awarding $95,000.00 to the complainant is not supported by any material evidence and that the Chancellor's confirmation of same does not represent a concurrent finding of fact which is binding upon this Court under applicable law.

The case of Northern Truck Line, Inc. v. Dunn, 167 F.2d 650, 11 Alaska 583, is especially applicable here. In that case the Ninth Circuit Court of Appeals affirmed a

judgment for $1,500.00 in favor of plaintiff. Since the opinion is quite brief, we quote the entire opinion herein as follows:

> "Appellee sued to recover the sum of $1500 as the reasonable value of services rendered in negotiating certain contracts for appellant with the Civil Aeronautics Administration. On the trial the jury returned a verdict in his favor for that amount and judgment was entered accordingly. Appellant asks that the judgment be reversed on the ground that there was no proof of the value of the services *and* that the case should have been taken from the jury.
>
> The evidence on appellee's behalf is to the effect that in January of 1944 he orally agreed with one Haugen, acting for appellant, to endeavor to secure hauling contracts and jobs for the latter in Alaska on the understanding that his own trucks would participate with those of appellant in the hauling and that the profits from contracts obtained would be divided equally between the parties. Thereafter over a period of several months he negotiated hauling contracts on appellant's behalf with the Civil Aeronautics Administration. After these contracts had been obtained, one Meadows, appellant's president, repudiated the arrangement arrived at between appellee and Haugen and excluded the former from any further participation in the enterprise. Appellant, however, accepted the benefit of his services and performed the contracts, earning therefrom a total of approximately $55,000.
>
> While the evidence of the value of the services rendered may be thought somewhat sketchy, there was enough to show the expenditure by appellee of a large

amount of time and effort, as well as the incurring of substantial expenses, in obtaining these desirable and presumably profitable contracts. Appellee testified that appellant refused to disclose to him the amount of profits derived, and there was no showing on the other side that substantial profits were not in fact realized. In this state of the records we think the verdict of the jury has sufficient evidentiary support.

Haugen, testifying on behalf of appellant, denied the making of any agreement or arrangement with appellee. In the circumstances of this case we think quantum meruit was not an inappropriate remedy. Jobst v. City of Danville, 212 Ill.App. 571; Tharp v. Jackson, 85 Or. 78, 165 P. 585, 1173; Edw. Thompson v. Decker, 200 Ill.App. 179; Humphreys v. Orrey. 220 Ill.App. 523; Sessions v. Pacific Improvement Co., 57 Cal.App. 1, 206 P. 653; Hogan v. Rosenthal, 127 App.Div. 312, 111 N.Y.S. 676; Baruch v. Giblin, 122 Fla. 59, 164 So. 831.

The judgment is affirmed.'' (Northern Truck Line v. Dunn, supra, pp. 650, 651)

The Special Master used three methods or approaches for the purpose of determining what amount should be paid to complainant as commissions on sales of merchandise in 1948 pursuant to orders for such merchandise obtained by him and his sales force, and accepted and filled by defendant.

The three such approaches and his findings as a result thereof appear in the following portion of the Special Master's report:

"Three such means of approaches have occurred to me, each of which provides an approximate measure of the sum sought. First, since the proof shows, as heretofore

mentioned, that Mr. Hunt and his sales force turned in a sufficient amount of orders and commitments to take care of the full production of the defendant for 1948, and according to Mr. Hunt, an amount actually in excess of the amount eventually shipped, which testimony was not effectively met by the defendant, it appears to be proper to begin with the total amount shipped by defendant in 1948, less returns, or a total of approximately $2,704,670.00. Ten per cent (10%) of this figure is $270,467.00, which would have been the approximate amount due Mr. Hunt and his sales force for 1948 had he been allowed to complete the year's work. From Exhibit 14 to the Deposition of Witness Bradley, taken October 2, 1962, which Exhibit contains the defendant's commission records for the years 1947 and 1948, it appears that during 1948, salesmen other than Mr. Hunt had credited to their commission accounts a total of approximately $92,635.00. The defendant should be credited with that amount, which would leave a balance of $177,832.00, or approximately $178,000.00.

Since Mr. Hunt did not in fact give the defendant a full year's service, he should not be allowed a full year's compensation. A strict apportionment according to time, however, is obviously improper since a large part of the work was actually done in 1947 and since in any event the obtaining of the initial orders was the principal and most valuable aspect of the complainant's services. There is, however, no way to measure precisely the amount which in all fairness should be deducted from this total for this reason. Considering the nature of the remaining work, however, as it appears or may be inferred from scattered references in the record,

it appears that a reduction of one-third (⅓) would be fair to both parties in consideration of this factor. Deducting $59,000.00 from $178,000.00 would leave $129,000.00. According to the Witness Bradley, Mr. Hunt was paid approximately $11,000.00 by defendant for commissions on shipments made in 1948. (W. Bradley, 10/2/64, p. 31). Deducting the latter sum would leave a balance of approximately $118,000.00.'' (Vol. II, Tr., pp. 179, 180, 181)

The Special Master then explained the other two approaches used by him, concluding that as a result of the second approach approximately $99,000.00 was due complainant as unpaid commissions on 1948 sales, and concluding, as a result of the third approach, that $93,000.00 was due the complainant as unpaid commissions on 1948 sales and in the concluding paragraphs of said report the Special Master said:

''It is recognized that all of the above approaches are approximations. No one of them appears to be all sufficient under the circumstances, *although perhaps the first should be accorded somewhat greater weight, since this approach is based entirely on 1948 sales experience of the Company* and since the 1947 figures in this regard are incomplete.

Considering, therefore, the entire record, the applicable law and the fundamental principles of justice and equity, it is my considered judgment that an award to Mr. Hunt of $110,000.00 would be proper in this case.'' (Emphasis supplied.)

\* \* \* \* \* \*

''On the other hand, $110,000.00 appears to be fair to the complainant. It is somewhat less than he earned in

1947 for a lesser amount of business, but after all, he had some ten months left in 1948 to devote to other productive purposes.

It is recognized that the conculsion reached here is not predicated upon the sort of exact accounting which would have been desirable, but which was under the record before me impossible to obtain.

It is further recognized that the result might well have been a few thousand dollars more or less than the amount, but $110,000.00 represents my best judgment after extensive consideration of all pertinent factors.'' (Special Master's Report, Tr., Vol. II, pp. 182, 183)

Exceptions were filed to the foregoing report and as a result thereof, the Special Master heard additional proof, as a result of which he reached the following conclusion:

''Mr. Bradley also in his testimony clarified the discrepancy in the total 1948 sales figures of the defendant. From his testimony, I find that the figure used by me in my previous report in the amount of $2,790,- 640.63 was in error, and the correct figure for the total 1948 sales of the defendant is $2,325,017.36. Therefore, I desire to amend my previous report so as to substitute the correct figure for the erroneous figure previously used by me therein.'' (Supplemental Report, Tr., Vol. II, p. 184)

Finally, he concluded his supplemental report as follows:

''Considering, therefore, the entire record, the applicable law, and the fundamental principles of justice and equity, it is my considered judgment that the amount

which I previously found and reported to be reasonable compensation for Mr. Hunt should be reduced from $110,000.00 to $95,000.00, and I so report and recommend. To this extent, I sustain the exceptions of the defendant and so modify my report." (Supplemental Report, Tr., Vol. II, pp. 185, 186)

Therefore, the Special Master found as a fact that complainant and his sales force were responsible for securing orders for merchandise totaling $2,325,017.36, which orders were accepted and filled by the defendant and, therefore, represented sales by the defendant for the year 1948 upon which the complainant was entitled to receive a commission of ten percent.

This report was confirmed by the Chancellor and, therefore, to this extent, it is a concurrent finding of fact.

Such finding of fact is supported by competent evidence in the record, contained in depositions of the complainant, W. B. Hunt, Robert Smith, Vice-president and General Manager of defendant, Temco, Herman Bradley, and P. B. Womack, the latter two of whom are accountants.

Since this concurrent finding of fact is supported by material evidence in the record we are bound thereby and cannot disturb it. Pitt v. Bacherig, 43 Tenn.App. 273, 307 S.W.2d 798 (1957); Lebanon Bank and Trust Co. v. Grandstaff, 24 Tenn.App. 162, 141 S.W.2d 924 (1940); Dale v. Hartman, 157 Tenn. 60, 6 S.W.2d 319 (1928); T.C.A. sec. 27-113.

However, it appears upon the face of the Master's report that a mathematical error was made in the calculations which lead to the first conclusion of the Special

Master that Mr. Hunt was entitled to $110,000.00 as unpaid commissions on 1948 sales.

There was a $10,000.00 error in the computation made in the Special Master's first approach and it appears in the report as follows:

The sum of $2,704,670.00 was first determined by the Master as sales for 1948 (later corrected to $2,325,017.36), and ten percent of this figure was computed as being $270,467.00. From this amount the Master deducted $92,635.00 for commissions paid to other salesmen and thus arrived at a round number remainder of $178,000.00.

Then using the factor of one-third, he deducted $59,-000.00 from $178,000.00 and showed the remainder as $129,000.00. Therefore, it can readily be seen that a $10,000.00 error was made in this process of subtraction and the correct remainder was $119,000.00 instead of $129,000.00.

The Master deducted $11,000.00 already paid to Mr. Hunt as commissions on 1948 sales from $129,000.00 and showed the balance to be $118,000.00, which should have been $108,000.00.

Later, when exceptions were filed and the Master heard additional proof, as a result of which he concluded that the base amount of sales shown on which commissions should be computed was $2,325,017.36 instead of $2,790,-640.63, he reduced the amount which he finally determined should be awarded complainant as unpaid commissions from $110,000.00 to $95,000.00. However, no mention was made of the $10,000.00 error, so we assume it was not taken into account in reducing the amount awarded to $95,000.00.

When the Master's formula under the first approach is applied to the corrected figure of $2,325,017.36, the correct mathematical calculation on that basis results in unpaid commissions due complainant in the amount of $82,244.00 instead of $95,000.00. This correct mathematical calculation (omitting the odd cents) is accomplished in the following manner:

| | | |
|---|---|---|
| Adjusted sales for 1948 | | $2,325,017.36 |
| 10% commission on above sales | | $232,501 |
| Less commissions paid to others | $92,635 | |
| Less ⅓ of $139,866 | $46,622 | |
| Less commissions paid to Hunt for 1948 | $11,000 | |
| Total deductions | $150,257 | |
| Remaining unpaid commissions on 1948 sales | | $82,244 |

Naturally, we assume that both the Special Master and the Chancellor intended for the amount which they concurrently determined should be awarded to complainant as unpaid commissions on 1948 sales should be arrived at by correct, instead of erroneous, mathematical calculations and therefore, such erroneous mathematical calculations can be corrected here without disturbing the determinative findings of fact concurrently made by the Special Master and the Chancellor.

The equitable principle of recovery, upon a quantum meruit basis, for beneficial services rendered by one and accepted by another, has been upheld by the Appellate Courts of this State in several cases, including Murray v. Grissim, 40 Tenn.App. 246, 290 S.W.2d 888 (1956), wherein this Court said:

"From the mere rendering of such services by one and their acceptance by another, the law, without regard to the other's intent, will ordinarily raise a quasi contract on his part to pay the reasonable value of such services; or the circumstances may warrant the triers of fact in finding an implied promise or contract on his part to pay such value. 1 Williston, Contracts (Rev.Ed. 1936), secs. 3, 36, 91; Rest., Contracts, secs. 5, 72." Murray v. Grissim, supra, p. 250, 290 S.W.2d p. 890.

The fourth and eighth assignments are respectfully overruled.

Under the sixth assignment, defendant insists that the Court erred in awarding a fee of $10,500.00 to the Special Master and argues that the appointment of such Special Master was made under the terms and provisions of T.C.A. sec. 20-1402 which is as follows:

"20-1402. *Power to appoint referee.*—Any judge of a court of law or any chancellor of a court of equity may, in term time or at chambers, by consent in open court of all parties litigant, or their counsel of record, appoint one learned in the law, so agreed upon by the litigants, to act as referee in the trial of any or all of the issues in an action or suit, whether the issues be of fact or law, or both; or to decide a cause the record of which has been made; and the court may, or may not, enter an order of reference."

It is apparent to us that the Chancellor' did not intend to appoint the Special Master under and by virtue of the terms and provisions of the foregoing Code Section, especially since such appointment was made without consent of the parties or their counsel as required by T.C.A. sec. 20-1402. Therefore, this Code Section is not

applicable and neither is a succeeding Section, T.C.A. sec. 20-1410, providing for a maximum compensation of $12.50 per day, applicable to this appointment.

The fixing of the Special Master's fee is a matter which addressed itself to the sound discretion of the Chancellor and the Appellate Courts should not disturb the exercise of such discretion unless it has been abused.

No such abuse of discretion has occurred here in fixing the Special Master's fee of $10,500.00 and taxing it as a part of the costs against the defendant. The scope of the reference was broad and it necessarily involved the reading of a voluminous amount of evidence, examining and considering audits which involved complicated accounting procedures, all of which was time consuming, as shown by the Special Master's sworn petition, which shows that he personally devoted one hundred and sixty and one-half hours time to the performance of his duties. in the case in addition to the time devoted to it by members of his office staff.

The members of this Court are not in as advantageous a position as the Chancellor was to determine the value of the Special Master's services and we must indulge the presumption that his discretion in fixing the fee was not abused, unless there is some evidence of it in the record. Since there is no such evidence of abuse of discretion, we must respectfully overrule the sixth assignment. This disposes of all the defendant's assignments.

In the brief filed in support of the cross appeal complainant's counsel say:

"Although, the complainant takes the position on this appeal that both parties are bound by all of the con-

current findings of the Special Master and the Chancellor, including the finding of the amount justly due complainant, because of Section 27-113 T.C.A. and the cases heretofore cited (Brief, supra, 40) which cases hold that this Honorable Court has no power to disturb such a concurrent finding, if there is any material evidence to support such finding. However, if this Honorable Court should hold otherwise, then it is the position of the complainant that this cross appeal should be sustained.''

Since we agree with complainant that a concurrent finding of fact has been made by the Master and the Chancellor, which is supported by material evidence, and is therefore, binding upon this Court, it is not necessary for us to consider such cross appeal.

The decree of the Chancellor is modified as herein indicated and, as thus modified it is affirmed and the case remanded to the trial Court for enforcement of the decree as modified. The costs of this appeal will be borne equally by complainant and defendant, in other words, complainant will pay one-half of such costs and the defendant will pay the other one-half thereof.

Shriver, P.J. (M.S.), and Todd, J., concur.

Puryear, Judge.

### ON PETITION TO REHEAR

The defendant-appellant has filed a petition to rehear requesting this Court to:

(1) Stay or postpone the accrual of interest on the judgment rendered by this Court from August 19, 1968, until September 15, 1969, and (2) reduce the fee of $10,500.00 awarded to the Special Master, Honorable

Thomas W. Steele, or, in the alternative, tax one-half of said fee against the complainant-appellee.

In considering the first request that the accrual of interest be stayed until September 15, 1969, we cannot ignore the fact that the defendant-appellant vigorously contested the entire claim of complainant-appellee and it was only when the case came on to be orally argued at the May, 1969, term that counsel for defendant-appellant made any concession which indicated an admission of liability for any amount to the complainant-appellee.

As we said in our original opinion on page 887 thereof, counsel made the statement during oral argument in this Court that the report of Mr. A. P. Ottarson, Jr., Clerk and Master, awarding complainant $14,190.41 should be confirmed.

We find no merit in the first request contained in the petition to rehear.

The second request made in said petition to rehear was fully considered by this Court in its original opinion, wherein we held that T.C.A. sec. 20-1410, providing for maximum compensation of $12.50 per day to the Master, was not applicable to this case, and that the Chancellor did not abuse his discretion in fixing compensation of the Special Master and taxing it as costs.

Therefore, the petition to rehear is respectfully denied.

Shriver, P.J. (M.S.), and Todd, J., concur.