James Robert PERRITT,
Plaintiff-Appellee,

v.

Brenda Bee PERRITT (Dickson),
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section.

Oct. 17, 1973.

W. H. Lassiter, Maddox, Lassiter & Jones, Huntingdon, for appellant.

J. Lee Taylor, Taylor & Keeton, Huntingdon, for appellee.

CARNEY, Presiding Judge.

Defendant-appellant, Mrs. Brenda Bee Perritt (now Dickson), has appealed from an order of the Chancery Court confirming the report of the Clerk and Master as to the inventory and value of personal property owned by the plaintiff, her former husband, James Robert Perritt, at the time the parties separated.

His Honor the Chancellor granted the plaintiff, James Robert Perritt, a divorce and approved a property settlement of the parties which, among other provisions, required the plaintiff to pay $90.00 per month for the support of their 5-year-old child. Custody of the child was given to the defendant wife. The parties agreed that a 90-acre farm owned as tenants by the entirety would be sold and the net proceeds divided equally. The farm was unencumbered.

Plaintiff was engaged in farming and had accumulated a quantity of farming equipment and livestock.

We quote pertinent paragraphs of the decree approving the settlement and ordering a reference:

"It is therefore ordered that the Master hear proof, including that on file and of record and report to the Court, the following:

1. What personal property was owned by the plaintiff on the date of the separation on December 5, 1971. This shall include all personal property, cash on hand, money in bank, machinery, crops, equipment, cars, trucks, livestock, hogs, cattle and in fact, all personal property except household effects which the parties have divided.

2. The value of all such personal property including bank accounts as found by the Master and/or the Court to be owned by the plaintiff on the 5th day of December, 1971.

3. The amount of any indebtedness, if any existed against said property.

The Clerk and Master will give credit to the plaintiff for the sum of $2,786.77.

It is further ordered, adjudged and decreed by the Court that plaintiff shall pay over to Brenda B. Perritt, one-half of the value of the personal property as so found by the Clerk and Master, after giving the proper credits and after the deduction of costs incident to the refer-

ence and the plaintiff is directed to pay the defendant said sum in cash."

The defendant-appellant contended in the Court below and in this Court that the plaintiff owned more personal property than the Clerk and Master reported him as owning at the time of separation and the defendant denied that the plaintiff owed his father any indebtedness on the 1965 automobile and the 1962 Ford tractor as reported by the Clerk and Master. The Ford tractor cost $2,500.00 in 1962 when plaintiff was in high school. The 1965 Chevrolet was bought new in the fall of 1964 after plaintiff graduated from high school but before he married. The Chevrolet cost $2,800.00.

For convenience we copy assignments of error verbatim from defendant's brief as follows:

"I. Both the Master and the Chancellor have failed to find and include the value of the Chevrolet car owned by plaintiff. (Tr. B. E. Vol. I, pgs. 67, 68, 69)

Both the Master and the Chancellor should have found this car to have a value of $600.00 and should have included this value in the total assets of the plaintiff.

II. The Court erred in failing to find and include the value of a combine and a planter owned by the plaintiff, the combine having a value of $4500.00 and the planter a value of $500.00.

III. The Court erred in finding that the plaintiff and his father each owned one-half interest in the following:

1 190–T Allis Chalmer tractor
1 6 bottom Massey Ferguson plow
1 Allis Chalmer 22 12 Disk
1 1965 Chevrolet 2 ton truck
1 4 row cultivator

The Court should have found said equipment to be owned by the plaintiff as the uncontradicted evidence shows said property and each and every item thereof was purchased by plaintiff, paid for by him with bills of sale and/or invoices and a bank statement showing plaintiff's pur-

chase thereof and the admission of plaintiff that the truck was titled in his name and that he depreciated the equipment and truck on his tax return.

IV. The Court erred in holding that James R. Perritt, the plaintiff owed his father $2,000.00 on a Ford tractor and $2,800.00 on the Chevrolet automobile.

V. The Clerk and Master and the Court erred in sustaining plaintiff's objection to the defendant's offer to introduce the bank records of plaintiff's father. (B. E. Vol. II, pgs. 217, 218, 219, 220).

VI. The Clerk and Master and the Court erred in sustaining plaintiff's objection to defendant's offer to introduce the income tax records of plaintiff's father, James C. (Bill) Perritt. (B. E. Vol. I, pgs. 118, 119)."

■ With reference to assignment of error No. I the parties agreed during the reference that the defendant should have the 1965 Chevrolet automobile valued at $600.00. For this reason the Clerk and Master failed to include the same in her report. Upon remand of this cause as hereinafter provided the value of the Chevrolet automobile will be included as part of plaintiff's property and, of course, the defendant will be charged with an additional $600.00 for the purchase price. Thus, assignment of error No. I is sustained.

As to assignments of error II and III, these facts are undisputed: Plaintiff purchased the Allis Chalmers 190 tractor from Paschal's Equipment Sales on or about December 5, 1970, and gave a check on his bank account in the amount of $6,251.90 plus a trade-in. The total purchase price of the tractor was $8,000.00. Plaintiff bought the John Deere planter on or about March 4, 1971, with a check for $500.00 payable to Pug Vickers of Huntingdon, Tennessee. Plaintiff purchased the Massey-Ferguson combine from a dealer on or about July 23, 1971, giving a check on his bank account for the purchase price of $4,500.00. Plaintiff

bought the two-ton Chevrolet truck on or about September 4, 1971, giving a check on his bank account in the amount of $2,200.00.

Title to all of these vehicles and farming tools was taken in the name of the plaintiff. Plaintiff showed himself as sole owner of them on his federal income tax returns and took depreciation thereon as owner. Plaintiff testified that the combine and planter were not his property but were bought by him for his father and that he paid for the same with his check merely as an accommodation to his father who reimbursed him the next day. The plaintiff stated that his father paid him in cash; that the plaintiff gave his father no receipt; and that no written evidence of the transfer of title passed between the parties.

Plaintiff also testified that before the separation he sold his father a one-half interest in the Allis Chalmers 190 tractor, six-bottom plow, disc, two-ton truck and four-row cultivator all of which plaintiff had purchased with his personal funds; that the father paid for these one-half interests in cash without any written evidence of the transfer of title passing between the parties.

Plaintiff and his father testified that after the separation on December 5, 1971, plaintiff sold his father all his property except the 1965 Chevrolet which sale included plaintiff's interest in hogs and corn, two tractors, two trucks, and other farm tools and equipment. This was on December 10, 1971. The father admitted that he expected to have to deal with defendant as to her interest in said property. The plaintiff said he sold his remaining interest in the Allis Chalmers 190 tractor, two-ton truck, planter and disc for one-half what his father paid for the first one-half.

The plaintiff made no explanation as to what became of the $9,000.00 or $10,000.00 which he said his father paid him by way of reimbursement and purchase price except the general statement that he used the funds for farming. Neither the plaintiff's bank ledger sheet nor his federal income tax report gave any evidence of these transactions.

The plaintiff's father corroborated the testimony of the plaintiff with the same general statements and the father offered no written evidence to corroborate his own testimony. When the defendant sought to introduce copies of the father's bank statement and federal income tax return, the Clerk and Master sustained objections from the plaintiff's attorney. The documents were never admitted into evidence before the Clerk and Master or before the Chancellor. The plaintiff's father did not testify as to the source of the cash funds with which he reimbursed his son for the combine and planter and for the purchase of the one-half interest in the tractor, truck, breaking plow, etc.

With reference to assignment of error No. IV, the Clerk and Master found that the plaintiff owed his father $2,800.00 original purchase price on the 1965 Chevrolet automobile and $2,000.00 on the 1962 Ford tractor after plaintiff took credit for $500.00 for sale of the 1962 Ford tractor to his father. No demand was ever made by the father upon the son from 1962 to the date of the separation for payment of either amount. Plaintiff paid his father $4,800.00 immediately after the separation even though the father did not ask him for payment.

The father said he told the boy he was going to help him get a car and that if the boy ever repaid him for it, it would be all right and if he didn't, it would be all right, that he never asked him for repayment and did not intend to ask him for repayment either of the tractor or the car but that after the separation and lawsuit, his son came to him and offered to pay $2,800.00 for the car and $2,500.00 for the tractor. The elder Perritt said he bought the 801 tractor back for $500.00 and the son paid $2,000.00 in cash on the remainder of the $2,500.00 purchase price of the tractor. He

had never had a note on either the tractor or the Chevrolet automobile. The father had used both the Chevrolet and the Ford tractor along with the son though both vehicles were titled in the son's name. On December 10, 1971, the father issued the son the following receipt:

"Dec. 10, 1971

Received of James Perritt $4800. for what he owes me in the past in full to date

J. C. Perritt"

The Clerk and Master put a value of $6,550.00 on the tractor, the six-bottom plow, the disc, the four-row cultivator, and the two-ton truck and reported that plaintiff was the owner of only one-half interest in said equipment at the time of the separation and his father was the owner of the other one-half. The Clerk and Master found that the father was the sole owner of the combine and planter.

■■■■ Defendant filed exceptions to the report of the Clerk and Master and upon a hearing before the Chancellor the Clerk and Master's report was confirmed without change. This Court has no authority to review a concurrent finding of fact by the Clerk and Master and the Chancellor where there is any material evidence to support such finding. Gibson's Suits in Chancery, Vol. 1, Section 663, 5th Edition; *Hunt v. Temco, Inc.* (1969), 61 Tenn.App. 35, 452 S.W.2d 879; *Ferrell v. Elrod* (1971), 63 Tenn.App. 129, 469 S.W.2d 678. The testimony of plaintiff and his father constitute material evidence as to the father's ownership of the equipment. Therefore, assignments of error II and III are respectfully overruled; however, for reasons hereinafter set out, the Chancellor's decree must be reversed and the cause remanded for a new trial.

Assignment of error No. IV relating to the indebtedness of $2,800.00 on the 1965 Chevrolet and $2,500.00 on the 801 tractor purchased in 1962 is sustained. Apparently,

the 1965 Chevrolet automobile which the elder Perritt purchased for his son in 1964 for $2,800.00 is the same Chevrolet that the parties have agreed that the defendant have under the property settlement at a price of $600.00. After the separation, the plaintiff said he sold the 801 Ford tractor which cost $2,500.00 to his father for $500.00 leaving a balance of $2,000.00 debt on the tractor due and owing by the plaintiff to his father. This $2,000.00 plus $2,800.00 purchase price on the 1965 Chevrolet made up the $4,800.00 debt found by the Clerk and Master due and owing to the elder Perritt.

The language of the property settlement and of the decree provides for a reference by the Clerk and Master as to "indebtedness against the property." We construe such language to refer to a lien, either equitable or legal, against the personal property owned by the plaintiff at the time of the separation which, of course, included the 1965 Chevrolet and the 801 Ford tractor. The testimony of Mr. Perritt, Sr. shows clearly that he did not retain any sort of lien against the 1962 801 Ford tractor or the 1965 Chevrolet automobile. He testified that if the son never paid him back, it would be all right. Such testimony completely negates a retention of any sort of lien by the father against the 801 Ford tractor and against the 1965 Chevrolet.

Even if it be conceded that the son did owe his father $2,800.00 for the purchase price of the Chevrolet and $2,500.00 for the purchase price of the tractor, such indebtedness is not outstanding "against the property" because no sort of lien was retained by the father on said property when he bought the 1965 Chevrolet and the 1962 Ford tractor for his son. It would appear, therefore, that the son, the plaintiff herein, is not entitled to a reduction in the amount of the value of the property owned by him at the time of separation because of such $2,800.00 and $2,000.00 indebtedness. However, since we are reversing for a new trial, we simply

set aside the Chancellor's decree affirming the report of the Clerk and Master regarding the $2,800.00 indebtedness and the $2,000.00 indebtedness to the father without prejudice to either of the parties to present new evidence and/or additional defenses or theories of their case regarding said indebtedness and/or liens upon the new trial. It would appear that the defendant stands in the position of a judgment creditor of the plaintiff in the instant case and as such she has the legal right to make any defenses against the claims of the father as her former husband, the plaintiff, could make, even to the extent of pleading the statute of limitations under some circumstances. *Robertson v. Wade*, 17 Tenn.App. 457, 465, 68 S.W.2d 487; 51 Am.Jur.2d, Section 396; 71 A.L.R.2d 1049, 1054.

Assignments of error V and VI insist that His Honor the Chancellor erred in sustaining the action of the Clerk and Master in refusing to admit in evidence bank records and tax returns of the father. In December, 1970, the plaintiff had a bank account of $15,500.00. During the year he had spent about $13,000.00 for equipment. At the time of the separation on December 5, 1971, plaintiff's bank account was only $8,900.00.

We think the defendant's attorney was entitled to cross-examine the plaintiff's father concerning the father's bank account and income tax returns.

■ Acts connected with a transfer different from the usual course of such transactions when bona fide are badges of fraud. Gibson's Suits in Chancery, Section 1057, subparagraph 11. Admittedly, the plaintiff, who paid for the property in question, used the same, had legal title to the same and took full depreciation on said property on his federal income tax return. Such facts are contradictory to his testimony that he was only the owner of one-half interest in some of the property and had no interest in the $4,500.00 combine and planter. Two persons cannot exclusively own the same thing (duo non possunt in solido unam rem possidere). Gibson's Suits in Chancery, Vol. 1, Section 74, page 92.

■ The father was vague as to the source of the cash money which he allegedly paid his son for the purchase price of the one-half interest in the farm equipment and reimbursement for the combine and planter. Fraus latet in generalibus (fraud lurks in general expressions). The refusal of the Clerk and Master to permit the defendant to examine the father's bank records and income tax returns insofar as they related to the transactions between the father and the son and to cross-examine the father regarding the same constituted reversible error.

". . . Courts of Equity do not restrict themselves by the same rigid rules that Courts of Law do, in the investigation of fraud, and in the evidence and proofs required to establish it.

"Fraud assumes many shapes, disguises and subterfuges, and is generally so secretly hatched that it can only be detected by a consideration of facts and circumstances, which are frequently trivial, remote and disconnected, and which cannot be interpreted without bringing them together, and contemplating them all in one view. In order to do this it is necessary to pick one fact or circumstance here, another there, and a third yonder, until the collection is complete. Each detached piece of evidence is not, therefore, to be rejected when offered, because apparently trivial. A wide latitude of evidence is allowed; and if a fact or circumstance relates directly, or indirectly, to the transaction, it is admissible, however weak or slight it may be, its relevance depending, not upon its weight or force, but upon its bearing or tendency." Gibson's Suits in Chancery, Vol. 1, Section 456, page 520.

Assignments of error V and VI are, therefore, sustained.

Exceptions to a Master's report are in the nature of a motion for a new trial. Gibson's Suits in Chancery, Vol. 1, Section 663. The decree of the lower Court confirming the report of the Clerk and Master is set aside. The cause will be remanded to the lower Court for a new trial on all issues relating to the property of plaintiff and his indebtednesses, if any. The costs of this appeal are taxed to the plaintiff-appellee.

MATHERNE and NEARN, JJ., concur.