Gary L. PETERS, Appellee,

v.

**MICHAEL CONSTRUCTION COMPANY, INC., Michael Construction Company of Tennessee, Inc., MCC of Florida, Inc., Biloxi Pre-Stress Concrete, Inc., and J.B. Michael, Jr., Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Dec. 13, 1984.

Certiorari Denied by Supreme Court March 25, 1985.

Carlos C. Smith and Larry L. Cash with Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, for appellants.

F. Ferber Tracy and Harold H. Baxley with Spears, Moore, Rebman and Williams, Chattanooga, for appellee.

## OPINION

PARROTT, Presiding Judge.

The plaintiff, Gary L. Peters, brought this suit to determine whether he is entitled to additional compensation following the termination of his employment by the defendants. Peters is a certified engineer who worked for the defendants during a ten-year period ending in October of 1981. The defendants are J.B. Michael, Jr. and four heavy construction companies which Michael owns and controls. During his employment with Michael, Peters held positions of substantial responsibility in a relationship which proved quite lucrative for both Michael and Peters.

Throughout a long and complicated bench trial, Peters proceeded on two theories. He argued that he held a ten percent partnership interest in the profits and capital of one Michael corporation (which included the "Tennessee Division"). He argued alternatively that Michael had breached an oral employment contract and was liable for damages on that contract. The chancellor ruled—and Peters apparently concedes—that there is no basis for finding a partnership. The chancellor also ruled that any oral employment contract which Peters had with Michael is void because it is contrary to the statute of frauds. Peters appeals from this aspect of the chancellor's decision.

Although he found against Peters on both theories advanced by counsel, the chancellor awarded a judgment against Michael in the amount of $169,974.00. The chancellor based his judgment on an implied contract theory and calculated damages in a manner discussed more fully below. Not surprisingly, Michael finds this aspect of the chancellor's ruling objectionable and raises several issues to defeat it on appeal.

## I. THE FACTS:

The evidence tends to support the following facts. J.B. Michael, Jr. used a complex system of compensation to pay Peters and other key employees in his business. That system included a flat yearly salary and a bonus. The bonus was calculated as a fixed percentage of the profits on projects under the key employee's control. It was intended to give the employee a strong incentive to increase those profits. As it pertains to this suit, the central factor in the bonus calculation was the treatment of heavy equipment. Michael believed that—in order to keep profits high—equipment owned by the companies should be carefully maintained. He reasoned that careful maintenance would lower the huge capital

outlays required to replace equipment and would thus increase profits.

As an incentive to employees to encourage careful maintenance of heavy equipment, Michael charged the purchase price of equipment against the profits of the division which used the equipment. Thus a crane with a $100,000 price tag used by a given division, would be charged against the profits of that division over a five-year period. Because division profits were effectively lowered by $20,000 per annum for five years, the key employee in charge of the division would make a smaller bonus during those five years. However, proof showed that cranes and other heavy equipment functioned for much longer than five years if they were carefully maintained. Therefore, a division's profits, and the key employee's bonus, would rise substantially in the years after the crane was "paid for" out of that division's profits. Thus, a key employee could increase his bonus by maintaining equipment so that it lasted longer.

The proceeds from a heavy equipment sale were credited as profit within the seller division for purposes of deciding the key employee's bonus. Even when equipment was transferred from one division to another within the Michael operation, a credit equal to the fair market value was used to increase the profits of the transfer division and thereby enhance the managing employee's bonus. Michael emphasized to Peters that the best way for Peters to make money in the construction business was to build an interest in future bonuses by caring for equipment assigned to his division. Peters' bonus was always calculated as a fixed percentage of profits. At the time of his termination that percentage equalled ten percent of all profits on projects under Peters' control.

The trial court found that Peters held an equitable interest in the equipment which had been charged against the profits in his division. The chancellor stated that he "considered several alternatives to compensate Mr. Peters equitably upon his termina-

tion because upon his termination he lost the right to use the equipment that had been paid for out of the profits of his division and out of his bonus." The parties contested the amount due Peters during the last full fiscal year and four months that he was with Michael. The chancellor decided that Peters should have an amount equal to ten percent of the equipment payments which had been deducted from Peters' profits during that sixteen-month period and found that amount to be $185,740. He subtracted from that figure a $36,313 "negative bonus" which Michael argued had been overpaid to Peters in his last bonus.[1] Michael also argued that Peters' bonus should be further reduced because an $800,000 damages claim was pending in a suit over environmental damage caused by a project which Peters had supervised. The chancellor took the $800,000 figure and divided it by two because of two contingencies: (1) that the full $800,000 would not be assessed against Michael, and (2) that the corporation insurance would cover part or all of the claim. He then took the ten percent of the $400,000, for $40,000. The chancellor found that Michael realized an increased profit of $225,000 on a project begun by Peters. The chancellor also credited most of a large insurance rebate check to Peters' division and awarded Peters ten percent of that figure or $38,047. Thus, the chancellor arrived at the final judgment amount using the following calculation:

| Base figure | – $185,740 | 10 percent of the amount paid by Peters' division during his final 16 months with Michael |
| Debits | – 36,313 | alleged overpayment to Peters |
| | 40,000 | 10% of the $400,000 potential claim against Michael discounted after it was discounted by one-half |
| Credits | – 22,500 | 10% of the increased profits on a Peters project |
| | 38,047 | 10% of that part of an insurance rebate attributable to premium for Peters' division |
| Final judgment | – $169,974 | |

1. Michael argued in a counterclaim that the $36,313 was overpaid based on misinformation supplied by Peters. The chancellor made no

explicit decision on Michael's counterclaim but permitted it to be offset against the amount which Peters was awarded.

We affirm the chancellor's conclusion that Peters cannot recover on the bases of oral employment contract or partnership. We reverse the chancellor's decision on quasi contract for two reasons—Peters' failure to show unjust enrichment and his failure to prove damages. Each of these is a sufficient basis for reversal; but, because of the complexities of this case, each merits some discussion.

## II. FAILURE TO PROVE UNJUST ENRICHMENT

■ The Tennessee case of *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 155 (1966) sets out the essential prerequisites for a recovery in quasi contract as follows: "A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." (quoting Restitution and Implied Contracts, 66 Am.Jur.2d 947 § 4). This is not a proper case for the imposition of a quasi contract because the third prerequisite is not met; *i.e.* Michael corporations have not received a benefit under circumstances which would make it inequitable for them to retain that benefit. This last prerequisite is less precise than the first two but no less essential. Its application in this case may best be explained by contrasting the facts at hand with those in a quasi contract case cited and relied upon by the chancellor below. As the chancellor noted, *Hunt v. Temco,* 61 Tenn.App. 35, 452 S.W.2d 879 (1969) is similar to the case at bar because it is a suit by a terminated employee to recover the value of services rendered during the employment relation. The complainant in *Hunt* was a former sales manager for a heater manufacturer, who had received a commission of from ten to twenty percent on certain heaters. His commission was fixed by a written contract which expired by its own terms but was orally renewed until January 7, 1948. The complainant sought to recover a commission on sales which occurred between January 7, 1948, and the date he was discharged, February 21, 1948.

■ The trial court permitted recovery in *Hunt* and this court affirmed that decision. However, despite their apparent similarities, this case is distinguishable from *Hunt* in ways which must preclude recovery here. The essential distinction turns on the nature of unjust enrichment. As the *Paschal* court emphasized, the "most significant requirement for recovery on quasi contract is that the enrichment to the defendant be unjust." In *Hunt,* the complainant was directly responsible for purchases from the defendant by his customers. Bluntly put, money flowed into the defendant's pocket which he would not have received but for the efforts of the complainant. The same cannot be said in the case at bar. Peters did not, in any sense of the word, "pay" for the heavy equipment. The Michael corporations purchased each and every piece of equipment. No money flowed to Michael through Peters' efforts to maintain the equipment.

In short, this voluminous record contains no evidence that Michael was enriched, much less unjustly enriched, by Peters' decision to maintain equipment so as to preserve its value. Michael will undoubtedly receive some economic benefit if the equipment lasts three weeks (or six months, or ten years) longer because of Peters' effort to maintain it carefully. Similarly, Michael will benefit if it sells equipment which has an enhanced fair market value because of Peters' efforts. But at this point there is no showing that Michael has received such a benefit. Moreover, there is no proof that such a benefit, if and when it is realized, would be unjust.

We note here that Peters does not claim to have been undercompensated during his employment with Michael. Indeed, the record shows that Peters received more than $650,000 in bonuses alone during the ten years he worked for Michael. We cannot conclude that a corporate employer is unjustly enriched because its employee

takes pains to preserve and maintain the capital assets of the corporation, even where the employer has devised a compensation scheme which rewards that employee for maintaining corporate assets. Therefore, we hold that Peters has failed to show that Michael was unjustly enriched.

## III. FAILURE TO PROVE DAMAGES

 There is a second reason why the judgment based on unjust enrichment cannot be affirmed. The inadequacy of proof in this case permits only a highly speculative assessment of damages. This fact is illustrated by an examination of the award made by the chancellor.

The chancellor chose the base figure of $185,740 by looking at the amount of "rent," or equipment payments which had been deducted from Peters' profits during his last sixteen months with the company. True, this figure is not speculative in the sense that it was readily ascertainable by examining Michael's books. However, it is arbitrary. The chancellor stated that he was compensating Peters for the loss of equipment use caused by his termination. We can divine no clear reason why the amount charged against Peters' profits should be just compensation for the value of the equipment's use. Moreover, we see no reason to use the last sixteen-month period rather than the last six months or twenty-six months. We find that the selection of this amount as a base figure is based on arbitrary assumption which cannot be upheld here. The same objection applies to the $40,000 debit. We see no basis in fact for the selection of the factor of one-half which was used to lower the $800,000 environmental claim. The same rationale would have permitted lowering the amount by one quarter to two-thirds. There is no proof in this record of the likelihood that the insurer will ultimately be held liable. Again we must find that this figure is based on assumptions which are inadequately supported by the record.

Because Peters has failed to prove damages, we find that his arguments about the Statute of Frauds merit little consideration. This was not a jury trial in which a preliminary ruling on the Statute of Frauds foreclosed plaintiff's efforts to prove damages flowing from an alleged breach of an oral contract. Rather, it was a bench trial in which plaintiff had an ample opportunity to prove damages flowing from the alleged breach. We pretermit the question of whether the statute forecloses his argument based on breach of oral contract. We do so because—even if, *arguendo*, this contract is beyond the statute—Peters has still failed to prove his damages in any but a highly speculative fashion. Moreover, we agree with the chancellor's finding that, quite apart from the Statute of Frauds, the proof shows that neither party contemplated what sums Peters might receive at termination. In other words, while there was undoubtedly an employment contract, the record does not disclose facts necessary to show contract for property rights in Michael's equipment.

For the reasons set forth above, we reverse the chancellor's finding that Peters should recover $169,974 on a quasi contract theory. We affirm that part of the chancellor's decision which denies recovery on oral employment contract and partnership theories. We further find that Michael's counterclaim for $36,313 is inadequately supported by the proof and it is hereby denied.[2] Thus, the chancellor's judgment is affirmed in part and reversed in part with the costs of this appeal taxed equally to the appellant and appellee.

SANDERS and FRANKS, JJ., concur.

---

**2.** The speculative nature of the proof *in re* Peters' final projects vitiates Michael's counterclaim for damages as well as Peters' claim. Any of several factors might increase or decrease the amount which Michael claims. For example, if most of the insurance rebate is attributable to Peters' account, 10 percent of that part, or $48,-047 as found by the chancellor, would more than offset the $36,313 claimed by Michael. Because of the speculative nature of the proof, we conclude that the evidence preponderates against Michael's claim for the $36,313 "overpayment."