■ MICHAEL B. MOREY et al., Respondents, v HELEN M. SINGS, Individually and as Administratrix of the Estate of HAROLD A. HONEY, Deceased, Appellant. (And A Third-Party Action.)—Crew III, J. Appeal from an order of the Supreme Court (Viscardi, J.), entered October 26, 1990 in Washington County, which, *inter alia,* granted plaintiffs' motion for summary judgment.

In January 1984, Harold A. Honey, since deceased, entered into a 99-year lease with Champlain Stone, Ltd. granting Champlain the right to quarry stone from a 280-acre parcel of land located in the Town of Dresden, Washington County. Rental was to be calculated based upon the amount and type of stone quarried with a minimum annual rent of $4,000. Upon Honey's death, the property in question was inherited by defendant, his daughter, who resided in Georgia. In 1988, plaintiff Michael B. Morey (hereinafter plaintiff), the sole shareholder and president of Champlain, entered into negotiations with defendant for the purchase of the 280-acre parcel. Defendant was initially offered $42,000 for the land by plaintiff's attorney.

Upon receiving that offer, defendant and her husband proceeded to New York to view the property themselves and meet with plaintiff. At that meeting, plaintiff offered to purchase the property for $60,000 and allegedly stated that if the offer was not accepted, plaintiff would mine only so much stone as would amount to the minimum rent of $4,000 per year. Defendant then hired local counsel who advised her that the land was worth more than plaintiff offered. Thereafter, plaintiff offered $75,000 for the land. A contract was prepared for the sale of the land in that amount, but defendant decided not to sign it. Thereafter, defendant engaged the services of another attorney who prepared the necessary papers for her appointment as administratrix of Honey's estate. She then returned to Georgia and had ongoing conversations with plaintiff concerning the sale of the land.

At some point defendant's husband spoke with plaintiff and advised that his wife was unwilling to take less than $175,000 for the property. Plaintiff agreed on that price subject to obtaining financing. Thereafter, defendant received a contract from plaintiff's attorney, signed the contract and returned it. The closing was scheduled for April 1, 1989. The parties were apparently not ready to close until several weeks after that

date. By letter dated July 6, 1989, plaintiff's attorney informed defendants' attorney that changing interest rates made it imperative that the closing occur on or before August 1, 1989 and that if it did not, plaintiffs would commence an action for specific performance. Defendant refused to close and this action was commenced for specific performance.

In her answer, defendant raised the defenses of failure to state a cause of action, inadequacy of consideration, duress, mutual mistake of fact, unconscionability, failure to join a necessary party and prematurity of the action because plaintiff was not ready, willing and able to perform. Additionally, defendant counterclaimed for rescission of the contract. Thereafter, defendant sought to amend her answer to add a counterclaim for fraud, conversion and misrepresentation. Plaintiffs then moved for summary judgment and defendant moved for an injunction preventing quarrying during the pendency of the action. Supreme Court granted plaintiffs' motion for summary judgment and denied defendant's motion to amend her answer and for injunctive relief. This appeal ensued.

At the outset, we note that Supreme Court did not address defendant's claim that plaintiffs failed to state a cause of action. However, the parties did not raise that issue in their briefs on this appeal and that is tantamount to an abandonment of the issue (see, Matter of Smith, 91 AD2d 789, 790).

Defendant's first contention is that the contract in question is voidable because defendant signed it under duress. Defendant claims that during the course of the negotiations she was advised that there was the potential that a constructive trust could be imposed upon the land by her grandmother because her grandmother had deeded the land to Honey as a gift. She further claims that she was advised that people were illegally cutting timber from the land and that plaintiff could do nothing about the situation because he did not own the land. Supreme Court determined, and we agree, that those allegations were insufficient to constitute duress. The record reflects that those statements were made during the early stages of negotiations and clearly before defendant's husband established a sale price at $175,000. Even if we fully credit defendant's affidavit in that regard, it is clear under the circumstances of this case that the statements did not actually constrain defendant's will and induce her to enter into the contract in question (see, 21 NY Jur 2d, Contracts, § 125, at 532-533). Defendant further claims that she was under economic duress because plaintiff threatened to quarry only enough stone to satisfy the minimum annual rent provision of

the 99-year lease. This argument is equally without merit. A party cannot be guilty of economic duress for refusing to do that which he is not legally obligated to do *(see, 805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d 447, 453).

Defendant next contends that she is entitled to rescission of the contract because the consideration therefor was inadequate. In support of that contention, she has submitted the affidavit of a real estate appraiser who expresses the opinion that the fair market value of the property in question is $800,000. We note that the affiant's appraisal, in arriving at fair market value, did not take into consideration the fact that the land was encumbered with a lease which had 95 years to run at the time. Plaintiffs' appraiser, on the other hand, took into consideration the lease encumbering the land and valued it at $114,000. Most importantly, the purchase price was established by defendant herself. It is quite clear that the adequacy of consideration is not a proper subject for judicial scrutiny absent a claim of fraud or misrepresentation *(see, Spaulding v Benenati,* 57 NY2d 418, 423). There are no facts in the record before us demonstrating that plaintiff engaged in fraud or misrepresented the value of the land in question. It is true that he made purchase offers of $42,000, $60,000 and $75,000 before the final price was settled upon, but those offers cannot be considered representations as to the fair market value of the land.

Defendant also contends that her unilateral mistake of fact as to the value of the land provides her grounds to rescind the contract. A contract may be voided for unilateral mistake of fact only where enforcement of the contract would be unconscionable, the mistake is material and was made despite the exercise of ordinary care *(see, McClain Realty v Rivers,* 144 AD2d 216, 218, *lv dismissed* 73 NY2d 995). Here, there has been no demonstration that defendant was unable, in the exercise of ordinary care, to discover what she now claims to be the real value of the land in question. The record reflects that eight months elapsed between plaintiff's initial contact with defendant and the execution of the contract of sale. Defendant makes no showing whatever as to how she was prevented from ascertaining what she now claims to be the real value of the property during that time interval.

Defendant's assertion that plaintiff is not entitled to the equitable remedy of specific performance by reason of the doctrine of "unclean hands" is wholly without merit. Defendant urges that because plaintiff was convicted of the crime of attempted robbery in the third degree in 1981, he should be

precluded from pursuing his legal remedy under the contract entered into in February 1989. His prior misconduct, however, is in no way related to the subject matter in litigation and defendant was clearly not injured thereby *(see, Mehlman v Avrech,* 146 AD2d 753, 754).

Defendant next contends that plaintiff is precluded from obtaining specific performance of the contract because he failed to demonstrate that he was ready, willing and able to close on the contract. A party seeking specific performance of a contract for the sale of real property must demonstrate that he/she was ready, willing and able to perform on the original law day or, if time was not of the essence, on a subsequent date fixed by the parties *(see, Zev v Merman,* 134 AD2d 555, 557, *affd* 73 NY2d 781). Correspondence fixing a new law day after the first day has passed is adequate notice that time is of the essence *(supra).* It appears in the case at bar that neither party was ready to close on April 1, 1989. In July 1989, plaintiff advised defendant's attorney that it was necessary to close by August 1, 1989 because of the impending change of interest rates. Plaintiff's sworn affidavit indicating that financing was in place and that he was ready, willing and able to proceed to close is sufficient for that purpose.

Finally, defendant contends that Supreme Court erred in failing to grant her leave to amend her answer to interpose an additional counterclaim. While it is clear that leave to amend pleadings should be freely granted, a court may properly deny such a motion where the amendment lacks merit *(see, Crimmins Contr. Co. v City of New York,* 74 NY2d 166, 170). Defendant's proposed amendment sought to add a counterclaim for fraud, conversion and misrepresentation based on the discrepancy between the contract rates for stone in the lease and the subsequent wholesale rates charged by plaintiff. In essence, defendant sought to recover damages for the failure of Champlain to increase the rates paid for stone quarried during its tenancy prior to the contract of sale as required by paragraph 2 (e) of its lease.

Paragraph 15 of the sales contract provided, "Each of the parties hereto remise and release the other from any and all claims, past, present or future, on account of the use and occupancy of the premises by the Buyers or anyone in their behalf pursuant to a certain lease between Harold A. Honey and Champlain Stone, Ltd. presently in effect." The language of that release is clear and unambiguous and the proposed counterclaim is based upon the subject matter covered in the release *(see, Troy News Co. v City of Troy,* 167 AD2d 730). The

record in this case reveals that defendant requested and received an accounting of the stone quarried after Honey's death and before she signed the contract. Thus, defendant knew or should have known of the facts giving rise to her counterclaim at the time she executed the contract of sale and, absent fraud, she is bound by the terms of the release contained therein (see, Kirchner v New Home Sewing Mach. Co., 135 NY 182, 188-189). Additionally, as noted by Supreme Court, it must be presumed that defendant was satisfied that the $175,000 contract price for the real estate was adequate to cover any claimed deficiencies which were or may have been reflected in the accounting.

Mahoney, P. J., Levine, Mercure and Harvey, JJ., concur. Ordered that the order is affirmed, with costs.