**The CHASE MANHATTAN BANK, N.A., On Behalf of Itself and as Administrator of the Custodian Account for the Charles A. Moore Residual Trust, Plaintiff,**

v.

**CVE, INC., J. Lynn Wilson, Donald C. Orr, W.R. Kinkade, and Robert L. Bibb, Defendants.**

No. 3–01–128.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 23, 2002.

Malcolm Leonard McCune, Mathew R. Zenner, Blackburn & McCune, PC, Nashville, TN, Mary Anne Hall, Schnader, Harrison, Segal & Lewis, LLP, Atlanta, GA, John C. Porter, Atlanta, GA, for Plaintiff.

Wallace Wordsworth Dietz, E. Steele Clayton, IV, Matthew M. Curley, Bass, Berry & Sims, Nashville, TN, for Defendants.

## *MEMORANDUM*

WISEMAN, Senior District Judge.

This case stems from an erroneous transfer of shares from a custodian account managed by Plaintiff Chase Manhattan Bank, Inc. ("Chase") to Defendant CVE, Inc. ("CVE"). Chase has filed a complaint seeking a declaratory judgment rescinding the transaction. In addition, Chase's initial complaint states four other causes of action: (1) unjust enrichment (2) breach of trust, (3) conversion, and (4) fraud. CVE has moved to dismiss each of Chase's claims. A hearing on CVE's motion was held on March 22, 2002.

### I. Factual Background

Chase is a New York corporation with its principal place of business in New York, New York. Defendant CVE is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

On October 11, 1989, a trust (hereinafter referred to as the "Moore Trust") was created by the last will and testament of Charles A. Moore for the benefit of his son, William C. Moore, and his wife, Sheila D. Moore. William and Sheila Moore were named Co–Trustees of the Moore Trust. On November 7, 1991, the Co–Trustees entered into a Custodian Account agreement with Manufacturers Hanover Trust Company. The purpose of the account (hereinafter referred to as the "Custodian Account") was to hold certain assets of the Moore Trust.[1] The terms of the agree-

---

1. Manufacturers Hanover Trust Company was subsequently acquired by Chase Manhattan through a series of mergers.

ment provide that it will be governed by the laws of the State of New York, which is where all of the assets in the account are held. The agreement further provides that the custodian is not permitted to make or execute investment decisions without the approval of the Co–Trustees.[2]

Among the assets held by the Moore Trust in the Custodian Account were 370 shares of stock in CVE, Inc. The shares were acquired over 50 years ago by an ancestor of Charles Moore. CVE is a privately held corporation based in Nashville, Tennessee with no market for its stock. On more than one occasion, representatives of CVE approached Chase with offers to repurchase the stock from the Moore Trust. The beneficiaries declined each offer.

Defendant J. Lynn Wilson is Secretary and Treasurer of CVE. Robert J. Eknoian is the representative of Chase Manhattan responsible for the Custodian Account. On August 21, 1998, Wilson made a verbal offer to Eknoian to purchase the shares for $376.70 each, or a total of $139,379.00, and on August 24, 1998, Wilson sent a letter to Chase to that effect. Once received, the letter was sent to Chase's Corporate Actions Department to be forwarded to the Co–Trustees of the Moore Trust for review.

The Corporate Actions Department at Chase mistakenly treated the letter as an order to execute the transaction, and the stock certificates representing the 370 shares in CVE were sent to CVE. Upon receipt of the certificates, on September 14, 1998, a check for $139,379.00 was sent by CVE to Chase.

On September 15, 1998, the beneficiaries of the Moore Trust discovered the sale and alerted Chase, demanding a return of the shares. Chase made immediate efforts to recover the shares. That day, Eknoian telephoned Wilson, informed him of the error, and sought to recover the shares. Again on September 17, 1998, Chase tendered a return of the $139,379.00, and again CVE refused. On October 27, 1998, Chase submitted a written request to cancel the transfer. On November 30, 1998, CVE refused that request in writing.

Some time after this transaction, Defendant Donald Orr, president and majority shareholder of CVE, sold his 5,680 shares (representing 51% of the outstanding shares) for a price approximately three times the price per share paid to the trust. Chase contends that this transaction is evidence of deceptive and fraudulent activity.

In a separate action, the Co–Trustees filed suit against Chase in state court in Georgia for conversion, negligence, and breach of contract in connection with Chase's sale of the CVE shares. The suit alleges that the sale was unauthorized and in breach of Chase's obligations to exercise due care, as well as in violation of the Custodian Account Agreement.

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). In examining a complaint in the context of a motion to dismiss, the complaint is to be construed liberally in favor of the plaintiff and all allegations of fact are taken as true. *See Lawrence v. Chancery Court*, 188 F.3d 687, 691 (6th Cir.1999). A motion to dismiss should be granted if it appears that the plaintiff can prove no set of facts in support of the

---

**2.** In its initial complaint, Plaintiff Chase Manhattan identified itself as an agent of the Co–Trustees, and claimed only after the Defendant's motion to dismiss that it was a bailee.

claim that would entitle the plaintiff to relief. *See id.*

## III. Discussion

### A. Choice of Law

■ The parties dispute which law should apply to Chase's claims. A federal court sitting in diversity must follow the conflict of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The characterization of the claim as a contract claim, a tort claim, or an equitable claim will affect the choice of law rules. Therefore, the Court must first decide under which conflict of laws analysis this case falls—contract, tort, or both.

### 1. Contract Claims

■ Chase's ultimate goal in this suit is to rescind the transaction in which it transferred the shares of CVE to defendant. This transaction is represented by an implied contract that Chase performed when it tendered the shares of CVE stock. Tennessee law provides that the law of the place where the contract was made governs the construction and validity of the contract unless the parties in good faith designate another jurisdiction. *See Davis v. Connecticut General Life Ins. Co.*, 743 F.Supp. 1273 (M.D.Tenn.1990). The place of contracting is the place where the contract is consummated. *See Bowman v. Price*, 143 Tenn. 366, 226 S.W. 210 (1920).

■ In the instant case, because there is not an express agreement, the parties did not explicitly state what law should apply. The offer letter was sent from CVE in Tennessee to Chase's office in New York. The Corporate Actions Department that executed the transaction (which constituted the acceptance) is located in New York. The check representing payment for the shares was sent to New York,

and the shares were tendered from Chase's New York office, where they were held. Given the circumstances, it appears that the implied contract for sale was consummated in New York. Therefore, New York substantive law must govern the construction and validity of the contract, and the evaluation of Chase's contract claims.

### 2. Tort Claims

■ With respect to conflicts of laws involving tort claims, Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *Wayland v. Peters*, 1997 WL 776338 (Tenn.Ct.App.1997) (citing *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn.1992)). This approach provides that the rights and liabilities of the parties to an action in tort are determined by the local law of the state that has the most significant relationship to the incident and the parties involved. *See id.* (citing *Restatement (Second) of Conflict of Laws* (1971) §§ 6, 145, 146, and 175). The most significant relationship is determined by examining: (1) the place of the alleged injury, (2) the place where the injurious conduct occurred, (3) the domicile and/or place of business of the parties involved, and (4) the place where the relationship of the parties is centered. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir.1996).

■ The circumstances of this case indicate that the state of Tennessee bears the most significant relationship to the parties and events that brought about the tort claims in this suit. The actions that constitute injurious conduct are the alleged deceptive misrepresentations made at the time of the offer and the later refusals to return the property once the errant transfer was discovered. These actions took place in Tennessee. As for the domicile of the parties, Chase's primary

place of business is New York, while CVE's is Tennessee, and both companies operate nationally. The transaction was initiated in Tennessee but it was eventually consummated in New York. Although it is difficult to determine in which state the relationship of the parties is centered, Tennessee appears to have the most significant relationship to the incident and the parties, and its substantive law therefore governs the tort claims in this dispute.

### 3. Unjust Enrichment

Section 221 of the Restatement (Second) of Conflict of Laws suggests that unjust enrichment cases fall somewhere between contract and tort. Although Tennessee courts have not enumerated conflict of laws principles to be considered in determining which state's laws to apply to an unjust enrichment claim, the Restatement provides helpful guidance. *See* Restatement (Second) of Conflict of Laws §§ 221 (1971). Under the Restatement test, the local law of the state which "has the most significant relationship to the occurrence and the parties" should be applied. The Restatement outlines the factors that should be taken into account in making this determination: (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship; (b) the place where the benefit or enrichment was received; (c) the place where the act conferring the benefit or enrichment was done; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment. Based on these criteria, it appears that Tennessee law also applies to the unjust enrichment claim.

### 4. Statutes of Limitations

Regardless of which state's law apply to the evaluation of the substantive claims, the Tennessee statutes of limitations should apply to all claims. Limitations of actions are generally governed by the laws of the forum state. *See Order of United Commercial Travelers of America v. Wolfe,* 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947). This is because limitations of actions, particularly the statute of limitations, are perceived to be procedural in nature, and matters of procedure are subject to the laws of the forum state. *See Barbour v. Erwin,* 82 Tenn. 716 (1885).

In Tennessee, it is well settled that the gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations. *See Alexander v. Third Nat'l Bank,* 915 S.W.2d 797, 798 (Tenn. 1996) (quoting *Pera v. Kroger Co.,* 674 S.W.2d 715, 719 (Tenn.1984)). The gravamen of an action, or the real purpose of an action, is determined by the basis for which damages are sought. *See Bland v. Smith,* 197 Tenn. 683, 277 S.W.2d 377, 379 (1955); *see also Prescott v. Adams,* 627 S.W.2d 134, 137 (Tenn.Ct.App.1981). The gravamen of an action is in contract and not in tort "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby." *Green v. Moore,* 2001 WL 1660828 (Tenn.Ct.App. Dec. 28, 2001) (quoting 54 C.J.S. Limitations of Actions §§ 50 (1987)). The gravamen of an action is in tort and not in contract, however, when an act constituting a contractual breach also constitutes a breach of a common law duty independent of the contract. *See id.* (citing 86 C.J.S. Torts §§ 4 (1997)).

Based on the above principles, the statute of limitations for tort actions ap-

plies to Chase's claims. Tennessee law requires that tort claims be commenced within three years of accruing the cause of action. T.C.A. § 28–3–105. Defendant has argued that Plaintiff's claims are barred by of the statute of limitations applicable to securities actions. However, T.C.A. § 48–2–122(j) states that the rights and remedies available under the securities statutes are in addition to any other rights or remedies that may exist under law and equity. Therefore, the securities statutes will not preempt the common law claims. Because Chase filed its claims within three years, its tort claims are not barred by the statute of limitations.

## B. Chase's Standing

Rule 17(a) of the Federal Rules of Civil Procedure requires that "every action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). The purpose of Rule 17(a) is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Fed.R.Civ.P. 17(a) Advisory Committee Notes. It is crucial, therefore, to determine whether Chase has standing as a real party in interest in this case.

Because the relationship between the parties was established by the Custodian Account Agreement, and the agreement specifies that it should be governed by the laws of New York, that state's laws should apply in evaluating the relationship. Surprisingly, the Court has found no case law in New York that specifically defines a custodian as a real party in interest. Nor was there any indication that a custodian was designated as a bailee, an agent or a unique type of representative party.[3]

Chase contends that it served as a bailee for the assets of the custodian account. Rule 17(a) provides that a "bailee ... may sue in that person's own name without joining the party for whose benefit the action is brought." Fed.R.Civ.P. 17(a). Because bailees are explicitly designated as real parties in interest, Chase would undoubtedly have standing if it were a bailee.

CVE asserts that Chase is not the real party in interest; rather, CVE argues that the Co–Trustees are the real parties in interest. *See Navarro Savings Assoc. v. Lee,* 446 U.S. 458, 462, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Trustees of an express trust are entitled to bring actions in their own names and are considered the real parties in interest for procedural purposes."); *see also* Fed.R.Civ.P. 17(a) (listing "trustee of an express trust" as a real party in interest). CVE contends that Chase is merely an agent that effectuated

---

**3.** Other courts have, however, made such distinctions. In *Wells v. Tennessee,* the Tennessee Court of Appeals distinguished between a custodian and a bailee. *See* 2001 WL 1545501 (Tenn.Ct.App.2001). The court first defined a bailment as "delivery of personalty for a particular purpose or mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled, it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it." *See id.* (quoting *Merritt v. Nationwide Warehouse Co.,* 605 S.W.2d 250, 252 (Tenn.Ct.App.1980)). Next, the court stated that "[i]n the distinction be-

tween bailment, or possession, and mere custody, the element of intent to control and possess plays the leading part." *Id.* "Where the owner of the goods places them in the actual physical control of another but does not intend to relinquish the right, as distinct from the power, of dominion over them, there is no bailment or possession but only a mere custody." *Id.* (quoting *Dundas v. Lincoln County,* 48 Or.App. 1025, 618 P.2d 978, 982–83 (1980)). Black's Law Dictionary defines dominion as "title to an article of property which arises from the power of disposition and the right of claiming it."

transactions on behalf of the Moore Trust. Indeed, in its complaint (Paragraphs 15 and 17 in the Statement of Facts), Chase identified itself as an agent. Notwithstanding CVE's contentions, however, Rule 17(a) "has been construed to allow an agent who has contracted in his own name to sue without joining his principal." *Bache & Co. v. International Controls Corp.*, 324 F.Supp. 998, 1005 (S.D.N.Y. 1971) (citing *Albany & Rensselaer Iron & Steel Co. v. Lundberg*, 121 U.S. 451, 7 S.Ct. 958, 30 L.Ed. 982 (1887); *Gray & Co. v. Cavalliotis*, 276 F. 565 (E.D.N.Y.1921)). Based on this construction of Rule 17(a), Chase has standing as a real party in interest whether it is an agent or a bailee.

### C. Claims Against CVE

#### 1. Rescission of the Contract—Mistake

■ The original complaint contains a claim for rescission without stating the basis for this Court to order the remedy. In Chase's brief in opposition to CVE's motion to dismiss, however, Chase claims both mutual and unilateral mistake would justify rescinding the contract. In New York, a claim for rescission of a contract must be based either on mutual mistake or fraudulently induced unilateral mistake. *See Cabrera v. DeGuerin*, 1999 WL 438473 (E.D.N.Y.1999). Under Rule 9(b) of the Federal Rules of Civil Procedure, in any complaint alleging fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

#### a. Mutual Mistake

■ In New York, a contract is voidable if the parties entered into the contract under a mutual mistake that was material, existed at the time the contract was executed, and affected facts on the basis of which the parties contracted. *See*

*Gould v. Board of Educ. of the Sewanhaka Central High Sch. Dist.*, 81 N.Y.2d 446, 453, 599 N.Y.S.2d 787, 616 N.E.2d 142 (N.Y.1993). The mutual mistake must exist at the time of contracting and must be substantial. *See id.*

Chase contends that its mistake was selling the shares without proper authorization from the trustees. Chase argues that the basis for CVE's mistake in this case is that Wilson knew that Eknoian and Chase did not have authority to complete the transaction and when CVE received the shares, it assumed that the appropriate party had authorized the sale. CVE's mistake, therefore, is assuming that the transaction had the correct authorization.

■ A mistake may only serve to void a contract where the mistake concerns a basic assumption of the contract, and the effect of the mistake is such that enforcement of the contract would be unconscionable, or if the other party had reason to know of the mistake or caused the mistake. *See* Restatement (Second) of Contracts § 153. In this case, the mistake identified by Chase does not involve a basic assumption upon which the purchase of the shares was premised. Rather, the mistake alleged was the clerical error which caused the shares to be sent to CVE. Further, CVE had no reason to know that Chase was executing the sale of the stock without authorization from the Co–Trustees. The fact that Chase acted on CVE's offer represented to CVE that Chase had the authority to do so. CVE's reliance on this apparent authority is not grounds for dismissal based on mutual mistake. Although the mistake identified by Chase relates to the agreement to purchase stock, it pertains primarily to the relationship between Chase and the Moore Trust, and the obligations of Chase under the Custodian Account Agreement, not to the relationship between Chase and CVE.

Such a mistake may not serve as a basis to void or rescind the contract.

#### b. Unilateral Mistake

■■■■■ To void a contract because of unilateral mistake, one must demonstrate the following: (1) that enforcement of the contract would be unconscionable; (2) that the mistake is material; and (3) the mistake occurred despite the exercise of reasonable care by the party in error. *See Morey v. Sings*, 174 A.D.2d 870, 570 N.Y.S.2d 864, 867 (N.Y.App.Div.1991). Moreover, there must be no prejudice to the adverse party and the rescission must put the parties back into status quo. *See Broadway–111th St. Assoc. v. Morris*, 160 A.D.2d 182, 184, 553 N.Y.S.2d 153 (N.Y.App.Div.1990).

■■■ For the reasons stated above, Chase's claim for unilateral mistake must fail. Furthermore, even if Chase were able to show that the mistake on its part was more than a mere clerical error, and was material, in both New York and Tennessee, the party alleging mistake must show that the mistake occurred despite the exercise of reasonable care. Chase's error is the result of a failure to exercise of reasonable care. Unilateral mistake may not serve as a basis to rescind the transaction.

#### 2. Unjust Enrichment

Under Tennessee law, "actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law and quantum meruit are essentially the same." *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966). The terms describe the class of cases where the law will impose a contractual relationship between the parties on the basis of justice and equity, regardless of an express assent to such a relationship. *See id.*

■■■■■ To state a claim for unjust enrichment, the Plaintiff must demonstrate: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance of such benefit without payment of the value thereof. *See Ergon, Inc. v. Amoco Oil Co.*, 966 F.Supp. 577, 586 (W.D.Tenn.1997) (citing *Paschall's Inc.*, 219 Tenn. 45, 407 S.W.2d 150); *see also Daily v. Gusto Records, Inc.*, 2001 WL 845746, 14 Fed.Appx. 579 (6th Cir.2001). The remedy for unjust enrichment requires that the person who has been unjustly enriched at the expense of another make restitution to that person. *See Browder v. Hite*, 602 S.W.2d 489, 491 (Tenn.Ct.App.1980). Furthermore, to sustain an action for unjust enrichment, the evidence proffered must be adequate to support an assessment of damages that is not merely highly speculative. *See Peters v. Michael Construction Co., Inc.*, 688 S.W.2d 81 (Tenn.Ct.App.1984) (cert. denied 1985).

CVE asserts that there is no unjust enrichment on these facts. The parties simply made an agreement and both parties performed according to the terms of the agreement. Although Orr received a larger per-share payment under different circumstances, his situation does not justify Chase's claim for unjust enrichment. As CVE argues, a contrary conclusion would suggest that a cause of action for unjust enrichment would exist any time a party believed that it could have obtained a better deal.

■■■ In the instant case, Chase has conferred a benefit upon CVE, the shares of CVE stock. However, CVE paid $139,379.00 for the 370 shares and Chase has not shown with any degree of certainty that this amount was not representative of the value of the shares. Furthermore, even if the Plaintiff had satisfied all of the

requisite elements to warrant a claim of unjust enrichment, the inadequacy of proof offered would permit only a highly speculative assessment of damages.[4] For these reasons, Chase's claim of unjust enrichment will be dismissed.

### 3. Conversion

■■■■■ To maintain an action for conversion, the plaintiff must show that the defendant converted the object to his own use or benefit, and that this exercise of dominion and control contravened the plaintiff's rights. *See Mammoth Cave Prod. Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn.Ct.App.1977). The rightful demand by the plaintiff, and a refusal by the defendant, are prima facie evidence of a conversion, and the onus is shifted to the defendant to show the facts constituting his justification or excuse for failure to deliver. *See Garvin v. Luttrell,* 29 Tenn. 16 (1848). Because Chase made repeated demands for return of the shares, and these demands have been resisted, Chase has established a prima facie case of conversion against CVE.

The Court's analysis does not end there, however. Rather, the burden shifts to CVE to show justification for its actions. In this case, the Custodian Agreement created a principal-agent relationship between Chase and the Co–Trustees. As administrator of the Custodian Account for the Moore Trust, Chase does not dispute that it had apparent authority to conduct transactions on behalf of the trust. Indeed, the Custodian Agreement specifically addresses Chase's "Limited Trading Authority." The question of apparent authority thus turns on whether the principal has acted in a manner that manifests the alleged agent's authority and whether the third party reasonably relied on the agent's authority.

■■■■ The Court concludes that under the circumstances, it was reasonable for CVE to conclude that Chase was acting within its apparent authority. It is undisputed that CVE was aware of Chase's relationship with the Co–Trustees. In fact, several prior offers to purchase the shares had been directed to Chase. As a result, CVE acted properly in forwarding its offer to Chase. Similarly, CVE acted properly when it received the share certificates and, in turn, forwarded the purchase price to Chase. CVE had no notice that Chase was acting outside the scope of its authority in agreeing to the sale.

There is a dearth of Tennessee case law on when an agent may assert its own lack of authority in a claim against a third party. In this instance, the Court finds that, as a matter of law, Chase should be estopped from asserting its lack of authority against CVE, an innocent party. CVE should not be made to bear the burden for Chase's actions outside the scope of its authority. Cases in other jurisdictions support such a finding. *See, e.g., Fitzgibbon v. Abatelli Real Estate,* 214 A.D.2d 642, 625 N.Y.S.2d 276, 277 (1995) (stating that apparent authority is an outgrowth of the equitable principle that, as between two innocent persons, the party who enabled the injury to occur should bear the loss). Based upon this analysis, the Court finds that CVE has demonstrated that its refusal to return the shares was justified under the facts of this case. Consequently, the conversion claim will be dismissed.

### 4. Claims based upon Fraud

Chase's complaint contains additional claims for breach of trust, fraud, construc-

---

**4.** Even if this Court were to allow additional proof, it would be difficult to discern a value for the shares because there is no market for them. Thus, it seems that any assessment of damages would be highly speculative.

tive truest, and money had and received. At oral argument, Chase agreed to a dismissal of its claims based on CVE's alleged fraudulent activity. Therefore, these claims will be dismissed.

### III. Conclusion

For the above stated reasons, CVE's motion to dismiss shall be GRANTED in its entirety.

An appropriate order will enter.

### ORDER

This case stems from an erroneous transfer of shares from a custodian account managed by Plaintiff Chase Manhattan Bank, Inc. ("Chase") to Defendant CVE, Inc. ("CVE"). Chase has filed a complaint seeking a declaratory judgment rescinding the transaction. In addition, Chase's initial complaint states four other causes of action: (1) unjust enrichment (2) breach of trust, (3) conversion, and (4) fraud. Defendants have filed a motion to dismiss for failure to state a claim as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons set forth in the accompanying memorandum, Defendants' motion is GRANTED in its entirety and Chase's claims are dismissed with prejudice.

It is so ORDERED.